IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00654–WYD–KMT

ROBERT JAMES MERCER,

     Plaintiff,

v.

ROBERT PETERSON, in his individual and official capacities,
MICHAEL MOORE, in his individual and official capacities,
WILLIAM FRANGIS,
ELBERT COUNTY SHERIFF'S DEPARTMENT, and
COUNTY OF ELBERT, COLORADO, in their official capacities,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     In this civil rights suit, Plaintiff alleges that Defendants violated his Fourth, Eighth and

Fourteenth Amendment rights.  The matter comes before the court on "Defendants' Motion for

Summary Judgment" (Doc. No. 83 [Mot.], filed December 8, 2010) and "Defendants' Errata

Regarding Motion for Summary Judgment" (Doc. No. 85 [Errata], filed December 9, 2010).

Plaintiff filed his response on December 29, 2010 (Doc. No. 88 [Resp.]) and Defendants filed

their reply on January 14, 2011 (Doc. No. 96 [Reply]).  The motion is ripe for review and

recommendation.

## STATEMENT OF THE CASE

This suit arises out of Plaintiff's arrest for driving while intoxicated and the alleged use of excessive force by Defendants Peterson and Moore in executing that arrest.  The following facts are taken from Plaintiff's Amended Complaint (Doc. No. 21 [Am. Compl.]), Defendants' Answer (Ans.) and the parties' submissions with respect to this Recommendation.

Plaintiff alleges, and Defendants do not dispute, that on April 5, 2007, Plaintiff was driving his vehicle in Elbert County when he was stopped by Defendants Peterson and Moore, both Elbert County Deputy Sheriffs, for suspicion of driving while intoxicated.  Defendant Peterson asked Plaintiff to perform a series of roadside sobriety tests and, when Plaintiff did not perform satisfactorily, he was placed under arrest for driving while intoxicated.  Defendant Peterson attempted to put hand restraints on Plaintiff who ran away.

Plaintiff further alleges that a short distance from his car, Defendants Peterson and Moore tackled Plaintiff and began placing him in hand restraints.  He claims that the officers used brutal and unnecessary force, a conclusion the Defendants dispute.  Plaintiff attempted to protect himself but insists that he did not attempt to strike or touch the officers in anger.  Plaintiff asserts that he sustained serious injures including a separated shoulder, numerous cuts and bruises and other injures not visibly apparent.

Plaintiff sues Defendants Peterson and Moore for excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments and for extreme and outrageous conduct.  He sues Defendant Frangis, the Sheriff of Elbert County, and Defendant Elbert County for negligent

hiring, training, supervision and discipline of Defendants Peterson and Moore.  Plaintiff seeks

"actual, compensatory, exemplary and punitive damages."  (Am. Compl. at 5.)

Defendants move for summary judgment on the bases that 1) Defendants Peterson and

Moore are entitled to qualified immunity; 2) to the extent Plaintiff attempts claims against

Defendant Frangis in his individual capacity, Plaintiff has not alleged and cannot establish that

Defendant Frangis personally participated in the events of April 5, 2007, and to the extent

Plaintiff sues Defendant Frangis in his official capacity, Plaintiff's claims fail as a matter of law;

and 3) Plaintiff's claim for extreme and outrageous conduct is barred by the statute of

limitations.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgments as a matter of law."  Fed. R. Civ.

P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once

the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & Cnty. of Denver*, 36

F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may

not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

56©.  A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

3

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A.    *Qualified Immunity*

Defendants argue that Defendants Peterson and Moore are entitled to qualified immunity because they did not violate any of Plaintiff's constitutional rights or any clearly established constitutional law.

Whether the officers are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (quotations and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Id.*

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987)).

Excessive force claims are governed by the Fourth Amendment's "objective

reasonableness" standard.[1]  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010)

(citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  As the Tenth Circuit has succinctly

explained,

> The Fourth Amendment forbids unreasonable seizures, including the use of
> excessive force in making an arrest. To determine whether the force used in a
> particular case is excessive "requires a careful balancing of the nature and quality
> of the intrusion on the individual's Fourth Amendment interests against the
> countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386,
> 396, (1989) (quotations omitted). The ultimate question "is whether the officers'
> actions are objectively reasonable in light of the facts and circumstances
> confronting them." *Id.* at 397 (quotations omitted). This determination "requires
> careful attention to the facts and circumstances of each particular case, including
> the severity of the crime at issue, whether the suspect poses an immediate threat
> to the safety of the officers or others, and whether he is actively resisting arrest or
> attempting to evade arrest by flight." *Id.* at 396.

*Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).  Moreover, the court

must judge the situation "from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." *Cavanaugh*, 625 F.3d at 664-65 (citing *Graham*, 490 U.S. at

396).  Thus, the reasonableness determination must "allow[] for the fact that police officers are

often forced to make split-second judgments about the amount of force that is necessary in a

particular situation." *Id.* (citations omitted).

---

[1] Plaintiff purports to assert claims under the Fourth, Eighth and Fourteenth Amendment.  (Am.
Compl. at ¶ 2.)  However, only the Fourth Amendment applies to uses of force "leading up to and
including the arrest of a citizen previously at liberty."  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir.
2010).

Plaintiff includes few allegations in his Amended Complaint regarding the specific use of force by Defendants Peterson and Moore.  The complaint acknowledges that Plaintiff was stopped for suspicion of driving while intoxicated and asked to perform a series of roadside sobriety tests.  (Am. Compl. at ¶¶ 8, 9.)  Subsequent to Plaintiff's performance, Defendant Peterson determined to place Plaintiff under arrest for driving while intoxicated and attempted to place hand restraints on Plaintiff.  (*Id.* at ¶ 9.)  Plaintiff claims he believed he was not intoxicated and should not be placed under arrest and he therefore ran from the officers on foot.  (*Id.* at ¶ 10.)  The complaint alleges that the officers gave chase and ultimately"tackled" him and 'began placing hand restraints on him."  (Id. at ¶ 11.)  Plaintiff then charges that "in doing so, [they] used brutal and unnecessary force."  (*Id.*)

Plaintiff elaborates on these allegations in his deposition testimony.  First, he denies "taking a swing" at Defendant Peterson when Defendant Peterson approached him to place him in hand restraints.  (Doc. No. 83, Ex. A-1 [Mercer Depo.] at 52:8-11.)  Plaintiff testified that when he was "tackled" he fell face forward with his hands in front of him and ended up on the ground with his hands underneath his body and Defendants Peterson and Moore on top of him. (*Id.* at 54-55.)  One of the deputies told him to put his hands behind his back, but Plaintiff admits he refused to do so.  (*Id.* at 53-54.)  Plaintiff states that, in attempting to wrestle his right arm out from under his body, Defendants Peterson and Moore punched and kneed him from behind and ultimately dislocated his right shoulder.  (*Id.* at 55: 5-10; 110:19-111:4; 114.)  Plaintiff also alleges he felt one of the deputies on top of him grab his head and repeatedly slam it into the ground while telling Plaintiff to pull his hands out from under his body.  (*Id.* at 53:19-21; 54: 5-

9; 56:11-24; 114.)  Eventually, Defendants Peterson and Moore got Plaintiff's hands behind his back and handcuffed him while he was still on the ground.  (*Id.* at 55:19-20.)  Plaintiff claims "they" lifted him up and took him back to the sheriff's vehicle where one of them slammed his head down on the trunk of the cruiser several times leaving blood all over the trunk.  (*Id.* at 55:20-21; 57:2-23.)  Plaintiff states that, at the cruiser, Defendants Peterson and Moore asked if he had weapons and patted him down, but he does not remember whether this was before or after they slammed his head on the trunk.  (*Id.* at 57:2-15.)  Plaintiff also denies trying to kick either Defendant at that point and insists he was completely compliant by this time because he was in too much pain from the shoulder dislocation.  (*Id.* at 57:24-58:3; 58:18-24.)

In their Motion for Summary Judgment, Defendants present the following facts as undisputed:

> . . .
> 2.    After making initial contact with Plaintiff, Deputy Peterson requested that Plaintiff perform a series of roadside sobriety tests including a preliminary breath test.  Plaintiff did not perform the tests satisfactorily and was placed under arrest for driving while intoxicated.
> 3.    During this exchange, Deputy Peterson instructed Plaintiff to turn around and put his hands behind his back; Plaintiff responded to Deputy Peterson's instructions by stating "I told him to turn around and he put his hands behind his back because he's being ridiculous."
> 4.    Deputy Peterson attempted to put hand restraints on Plaintiff, but Plaintiff began to run from the officers on foot.
> 5.    One of the Defendants took Plaintiff to the ground.
> 6.    Plaintiff refused to comply with Deputy Peterson's commands to give him his hands because Plaintiff "felt it was an illegal arrest, and I was fighting that illegal arrest."
> 7.    In order to gain Plaintiff's compliance, Deputy Peterson performed a palm heel strike to Plaintiff's right brachial plexus.
> 8.    Plaintiff testified "everything happened so quick, it's hard to remember exactly what happened."

9.    Plaintiff does not know who allegedly struck him in the back.

10.   Plaintiff does not know whether he was kneed by either Deputy.

11.   Neither Deputy Peterson nor Deputy Moore ever kicked Plaintiff.

12.   Plaintiff asserts that one of the Deputies slammed his head several times during the course of their encounter, but never identified which Deputy purportedly did so.

13.   After gaining control of the Plaintiff, the deputies handcuffed him and walked him back to their police cruiser.

. . .

(Mot. at 2-3 (citations omitted).)  Defendants argue that the undisputed facts demonstrate that

Defendants Peterson and Moore acted reasonably in applying limited force to restrain Plaintiff.

However, Plaintiff disputes certain of Defendants' undisputed facts.[2]  In his response

Plaintiff claims that Defendants' undisputed fact number 8, which suggests that Plaintiff could

not remember what happened, is taken out of context and that his deposition testimony clearly

shows that he knew he was being assaulted and beaten unreasonably and unlawfully by both

Defendants Peterson and Moore.  (Resp. at 2 (citing Mercer Depo. at 110-112).)  Plaintiff also

---

[2] In support Plaintiff attaches excerpts from his deposition (Resp. Exs. 1-6, 14), Defendant Moore's deposition (*Id.* Exs. 10, 15), Defendant Peterson's deposition (*Id.* Exs. 11, 18), and Defendant Frangis's deposition (*Id.* Exs. 16, 17), as well as Defendant Peterson's Responses to Plaintiff's First Set of Written Discovery Requests (*Id.* Ex. 7), Defendant Frangis's Responses to Plaintiff's First Set of Written Discovery Requests (*Id.* Ex. 13), Plaintiff's Amended Complaint (*Id.* Ex. 8), an unsworn written statement by Tamara Shouse, the passenger in the car Plaintiff was driving (*Id.* Ex. 9), and nineteen pages of what purport to be photographs (*Id.* Ex. 12).  The court has not considered all of these documents for the reasons set forth herein.  Plaintiff's Amended Complaint does not constitute evidence of disputed facts.  *See Celotex*, 477 U.S. at 324 (noting that the nonmoving party may not rest solely on the allegations in the pleadings); *see also* Fed. R. Civ. P. 56(c) (providing that a party asserting that a fact is genuinely disputed must support the assertion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations, admissions, interrogatory answers, or other materials").  The unsworn statement by Tamara Shouse does not meet the evidentiary requirements of Rule 56.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970).  Finally, the court's copies of the photographs are entirely black and completely illegible.  Notwithstanding, the photographs are not necessary to determine whether a genuine issue of disputed facts exists regarding the Defendants' actions.  In making its determination the court has considered the deposition testimony and discovery responses provided.

disputes facts number 9, 10, and 12, which suggest that Plaintiff did not know who struck him in the back, did not know whether he was kneed by either deputy, and could not identify which deputy slammed his head.  Plaintiff points to his deposition testimony where he states that both officers were punching and kneeing him.  (*Id.* at 2-3 (citing Mercer Depo. at 110-114).)

The court finds that Plaintiff's deposition testimony demonstrates that several genuinely disputed material facts remain.  For example, Plaintiff claims that he was punched and kneed while he was on the ground.  While Defendant Peterson admits that he performed a "heel strike to Plaintiff's right brachial plexus" (Mot. Ex. A-2 [Peterson Disc. Resp.] at 9), Plaintiff disputes that it was a "brachial strike" and claims that he was punched with a closed fist (Mercer Depo. at 113:3-20).  Also, other than suggesting that Plaintiff does not know whether he was kneed by either deputy, the court has found no evidence that either Defendant Peterson or Defendant Moore specifically deny kneeing Plaintiff.  At his deposition, when asked whether he was kicked while he was on the ground Plaintiff stated, "I don't know if I was kneed by them.  I know I wasn't kicked by them."  (Mercer Depo. at 114:18-23.)  However he also testified that he "[didn't] know if it was with their fist or with their knees because they were on top of me, but, yes, they struck me multiple times in the back" (*id.* at 111:1-4) and when asked whether the officer had his knee in Plaintiff's back, Plaintiff responded, "That's possible.  Everything happened so quick, it's hard to remember exactly what happened" (*id.* at 111:21-23).  Plaintiff also testified that "[h]e was punching and kneeing me in the back" (*id.* at 113:17-18) and "I just felt the – either the knees or the punches that were coming in my back . . . " (*id.* at 115:1-3).  To the extent that lack of clarity and inconsistencies in Plaintiff's deposition testimony raise

10

questions regarding his credibility, Plaintiff's credibility is not an issue before the court on

summary judgment.  *See Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1153 n.2 (10th

Cir. 2010) (stating that the district court correctly noted that it was inappropriate to weigh the

credibility of the sworn deposition testimony in evaluating entitlement to summary judgment and

citing *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) ("It is axiomatic that a judge may

not evaluate the credibility of witnesses in deciding a motion for summary judgment.")).

Accordingly, the court finds that Plaintiff's deposition testimony constitutes some evidence that

he was punched and kneed in the back.

Similarly, while Defendant Peterson denies striking Plaintiff's head against the ground

during his arrest or at any time (*see* Peterson Disc. Resp. at 5), Plaintiff claims that his head was

slammed into the ground and into the trunk of the law enforcement vehicle (Mercer Depo. at

53:19-20; 54:6-9; 56:11-22; 57:2-4, 10-15, 20-23; 111: 17-20; 113:20-21; 114:16-17; 115:1-3).

Defendants note that Plaintiff never identifies which deputy purportedly slammed Plaintiff's

head during the encounter.  (Mot. at 3.)  Again, ambiguity and inconsistencies in Plaintiff's

deposition testimony go to Plaintiff's credibility which is not part of the court's evaluation on

summary judgment.  Plaintiff's deposition testimony constitutes some evidence supporting

Plaintiff's allegation that his head was slammed into the ground and into the trunk of the cruiser.

There is also a dispute regarding Plaintiff's resistance and the threat he posed to the

officers.  In his discovery responses, Defendant Peterson[3] indicates that he felt Plaintiff posed an

[3] Defendants do not provide any evidence from Defendant Moore—in the form of deposition testimony or discovery responses or otherwise—regarding his involvement in the incident.  The excerpts from Moore's deposition provided by Plaintiff address Shouse's hearsay statement and Moore's excessive

"immediate threat to my safety and that of Cpl. Moore because [Plaintiff] was intoxicated, I did not know if he had a weapon and he used physical force against Cpl. Moore and me to prevent us from taking him unto custody."  (Peterson Disc. Resp. at 7.)  In describing probable cause to arrest Plaintiff, Peterson states that Plaintiff "failed to follow orders to turn around and place his hands behind his back, but instead took a swing at me, ran from me, and physically resisted arrest."  (*Id.* at 7.)  Peterson also states that he performed "a palm heel strike to [Plaintiff's] right brachial plexus origin" and that he felt this was "reasonable and necessary to gain control of [Plaintiff's] arms because he had his hands tucked under him out of view at the time, he continued to resist arrest and he refused to comply with verbal orders to put his hands behind his back."  (*Id.* at 6.)  Peterson denies that any force was applied to Plaintiff after he became compliant.  (*Id.* at 8.)

In his deposition, Plaintiff denies that he "took a swing" at Defendant Peterson.  (Mercer Depo. at 52:10-11.)  He does not deny that he refused to place his hands behind his back and struggled against Defendants Peterson's and Moore's efforts to place him in hand restraints.  However, Plaintiff claims that once he was placed in restraints, and with his shoulder dislocated, he became compliant.  (*Id.* at 57:24-58:3; 58:18-24.)  While Defendant Peterson denies using force on Plaintiff after he became compliant, Plaintiff claims that the officers slammed his head into the trunk of the vehicle.

---

force training (*see* Resp. Exs. 10 & 15) and are irrelevant to his involvement in the incident.

Based on Plaintiff's testimony regarding being punched, kneed, and having his head slammed into the ground and into the trunk of the police cruiser, a reasonable jury could find in Plaintiff's favor.  Accordingly, the court finds a genuine dispute over material facts regarding the use of force by Defendants Peterson and Moore exists.  Moreover, because the excessive force determination requires a balancing of the government interest against the amount and type of force used, this issue cannot be resolved on summary judgment.

The court must consider the impact of this finding on Defendants' assertion of qualified immunity.  Although several material facts are disputed, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment." *Cavanaugh*, 625 F.3d at 662.  In considering a qualified immunity defense the court must decide both whether Plaintiff has shown facts that make out a violation of a constitutional right and whether that right was clearly established.  *See Herrera,* 589 F.3d at 1070.

### 1.      Constitutional Violation

To determine whether the actions of Defendants Peterson and Moore in effecting Plaintiff's arrest were objectively reasonable, the court must consider the particular facts and circumstances of Plaintiff's case, including "the severity of the crime at issue, whether [Plaintiff] pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The undisputed facts show that Plaintiff was stopped for suspicion of driving while intoxicated and, after failing to satisfactorily complete the field sobriety tests, was placed under arrest.  (Peterson Disc. Resp. at 8.)  He attempted to evade arrest by running away from the

13

officers on foot and then, after he was tackled, refused to pull his hands out from under his body and put them behind his back.  (Mercer Depo. at 52:13-20; 54:5-17.)  Defendants Peterson and Moore wrestled with Plaintiff attempting to apply wrist restraints which were eventually placed on Plaintiff.  (*Id.* at 55.)

Defendant Peterson also indicates that he viewed Plaintiff as a threat to the officers' safety because he was intoxicated, Peterson did not know if he had a weapon and Plaintiff used physical force to avoid being taken into custody.  (Peterson Disc. Resp. at 7.)

Defendants are clearly privileged to use some amount of force to effectuate an arrest based on probable cause when the suspect is resisting arrest.  *See Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  However, the court must balance the government's interest in effectuating an arrest for the relatively serious crime of driving under the influence of intoxicants on a suspect attempting to evade arrest, against "the nature and quality of the intrusion on [Plaintiff's] Fourth Amendment interests."  *Id.*  While Defendants maintain that they used "limited force to restrain Plaintiff" (Mot. at 5) and deny several of Plaintiff's accusations, Plaintiff has alleged and provided deposition testimony as evidence that Defendants Peterson and Moore not only tackled him, punched him and kneed him in the back, and slammed his head into the ground while attempting to place him in hand restraints, but also slammed his head into the trunk of the police cruiser multiple times, after Plaintiff was in custody, his hands restrained and otherwise compliant.

14

At this stage of the proceedings, the facts must be viewed in the light most favorable to Plaintiff.  Defendants' use of force, including tackling Plaintiff and wrestling his arms behind his back, likely was justified in order to effectuate an arrest for a relatively serious crime on a suspect attempting to resist that arrest.  Defendants have not argued, however, that Plaintiff was a threat once he was restrained and taken to the police cruiser and the interaction at the vehicle does not appear to involve the kind of split-second judgments regarding the use of force to which the court should defer.  Viewing the evidence in the light most favorable to Plaintiff, slamming Plaintiffs head against the ground and later into the trunk of the police cruiser after Plaintiff was restrained and no longer combative might constitute gratuitous force on the part of Defendants Peterson and Moore, if the evidence were proven at trial.  If the Plaintiff can establish his allegations by a preponderance of the evidence, a reasonable jury could find the use of force by Defendants Peterson and Moore excessive and therefore unconstitutional.

### 2.      Clearly Established

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84.  In *Graham*, the Supreme Court unambiguously held that uses of force that are not objectively reasonable are unconstitutional. *Graham*, 490 U.S. at 395.  However, this "general proposition is not enough to turn *all* uses of excessive force into violations of clearly established law." *Casey*, 509 F.3d at 1284 (emphasis in original) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  "In other words, the fact that it is clear that any

unreasonable use of force is unconstitutional does not mean that it is always clear *which* uses of force are unreasonable." *Id.* (emphasis in original). The Tenth Circuit has explained:

> "Ordinarily," we say that for a rule to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992). However, because excessive force jurisprudence requires an all-things-considered inquiry with "careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern. *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir.2006) ("[A] general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." (quotations and alterations omitted)). Indeed, the Supreme Court has warned that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Hope decision "'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'" *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir.2006) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir.2004)).

*Id.* Accordingly, the circuit has adopted a sliding scale approach: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (citation omitted).

This court is unaware of any case in this circuit where a suspect initially resisted arrest but, once restrained and compliant, was subjected to force as severe as having his head slammed into a vehicle. The court need not find a case exactly on point to determine that no reasonable officer could believe that slamming a restrained and no-longer-combative suspect's head into a vehicle is a reasonable use of force, again at this stage affording an inference to Plaintiff that he

could prove his allegations. *Cf. Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir.2002) (denying qualified immunity in an excessive force case, finding "a reasonable officer could not possibly have believed that he then had the lawful authority to take her to the back of her car and slam her head against the trunk after she was arrested, handcuffed, and completely secured"). Accordingly, the court concludes that *Graham*'s general prohibition on the unreasonable use of force was sufficient notice to Defendants Peterson and Moore and, therefore, Defendants Peterson and Moore are not entitled to qualified immunity at the summary judgment stage.

**B.     *Defendants Frangis, Elbert County, and the Elbert County Sheriff's Department***

Defendants argue that, to the extent Defendant Frangis is sued in his individual capacity, Plaintiff has not established that Defendant Frangis personally participated in the events of April 5, 2007, and, to the extent that Plaintiff sues Defendant Frangis in his official capacity, Plaintiff's claims fail as a matter of law. (Mot. at 11-17.) Defendants also argue that all of the conduct forming the basis of Plaintiff's claims involves an alleged act or omission on the part of Defendants Frangis, Peterson and Moore; there is no separate basis upon which Plaintiff asserts a claim against the County of Elbert. (*Id.* at 11 n. 5.) Finally, Defendants argue that, to the extent Plaintiff is suing the Elbert County Sheriff's Department, there is no such entity that is capable of suing or being sued. (Errata at 1.)

Plaintiff asserts his second claim for relief against Defendants Frangis and Elbert County. Plaintiff alleges that "Defendant Sheriff Frangis and Defendant Elbert County negligently hired, trained, supervised and disciplined Defendants Moore and Peterson, and other Sheriff's Department Deputies, and by doing so, fostered and maintained an apathetic atmosphere, the

results of which led Sheriff's Deputies to violate the constitutional and statutory rights of citizens . . . ."[4]  (Amend. Compl. at ¶ 24.)

Plaintiff does not sue Defendant Frangis in his individual capacity.  The Amended Complaint clearly states that Plaintiff sues Defendant Frangis in his official capacity only.  (*Id.* at ¶ 6.)  Moreover, in his response, Plaintiff confirms that he does not believe Defendant Frangis personally participated in the events of April 5, 2007.  (Resp. at 8.)  Suing an individual defendant in his official capacity is another way of pleading an action against the county or municipality he represents.  *See Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n. 55 (1978); *Porro*, 624 F.3d at 1328.  Such official capacity claims are analyzed under the standard for municipal liability.  *Porro*, 624 F.3d at 1328.  Accordingly, Plaintiff's claims against Defendant Frangis and Defendant Elbert County are subject to the same analysis.

In *Monell*, the Supreme Court held,

> Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

---

[4] Defendants also argue that Elbert County is a governmental entity distinct from the Elbert County Sheriff and that Plaintiff has not asserted any basis for a claim against Elbert County.  (Mot. at 11 n. 5 (citing *Tunget v. Board of Cnty. Comm'rs of Delta Cnty.*, 992 P.2d 650, 652 (Colo. App. 1999).)  However, the case on which Defendants rely distinguished between sheriffs and boards of county commissioners for purposes of supervisory liability in a common law tort action.  *Tunget*, 992 P.2d at 652.  For municipal liability claims under § 1983, the county is an appropriate defendant.  *See Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("Under Colorado law municipalities and counties, not their various subsidiary departments, exist as bodies corporate and politic empowered to sue and be sued."); *see* Colo. Rev. Stat. § 30-11-101.

436 U.S. at 690-91.  However, the Court concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id.* at 691.  "[A] municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.*

Thus, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy or custom that caused the plaintiff's injury.  *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).  Specifically, a plaintiff must show 1) the existence of a municipal custom or policy and 2) a direct causal link between the custom or policy and the violation alleged.  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Moreover, the plaintiff must demonstrate that "through its deliberate conduct, the municipality was the moving force behind the constitutional violation."  *Brown*, 520 U.S. at 404.

Of course, where a plaintiff claims that a municipal policy itself violates federal law, or directs an employee to do so, liability under § 1983 is straightforward.  *Id.*  In their Motion, Defendants argue that Plaintiff "cannot establish that any custom, practice or policy of the Elbert County Sheriff existed that directly caused his injury" and that "[n]o evidence exists to support the notion that any of the Elbert County Sheriff's official policies are, on their face unconstitutional."[5]  (Mot. at 12.)  The court agrees with respect to Defendants Frangis and Elbert

---

[5] Defendants argue that, to the extent the court finds Elbert County is a proper party, their arguments in favor of Defendant Frangis in his official capacity apply with equal force to Elbert County.

19

County.[6]  Plaintiff has not alleged or provided evidence that any policy of Elbert County is itself unconstitutional.  Furthermore, in his response to Defendants undisputed fact 15,[7] Plaintiff insists that he is not contending that there is an unwritten policy regarding force; rather he claims that Defendants Frangis and Elbert County negligently hired, trained, supervised and disciplined the officers who are defendants in this case.  (Resp. at 3.)

1.      **Failure to Train**

A municipal policy itself need not be unconstitutional to give rise to liability under § 1983.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).  The Supreme Court has recognized that in limited circumstances, where "a concededly valid policy is unconstitutionally applied by an employee," the municipality may be held liable if the employee was not adequately trained in the policy and the constitutional wrong was caused by that failure to train. *Id.*  "[T]he inadequacy of training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  *Id.* at 388.  Because a municipality may only be held liable

---

[6] Although the Elbert County Sheriff's Department appears in the caption of the complaint, it is not included in Plaintiff's description of the parties or in any of Plaintiff's claims for relief.  (*See* Amend. Compl. ¶¶ 3-7, 18-32.)  Defendants argue that there is no such entity as the Elbert County Sheriff's Department, citing the Colorado Constitution, art. XIV, § 8.5 (providing that the general assembly shall have the authority to establish the "office of county sheriff").  (Errata at 1-2.)  Whether the "Sheriff's Department" is different from the "office of county sheriff" is a question of semantics not relevant here. It appears that under Colorado law, a Sheriff's Department is not a person for purposes of § 1983. Rather, the proper entity capable of suing or being sued is the county.  *See* Colo. Rev. Stat. § 30-11-101. To the extent the Sheriff's Department is a proper entity and Plaintiff has asserted claims against it, they fail for the same reasons as the claims against Defendants Frangis and Elbert County, as discussed herein.

[7] "No evidence exists to suggest that the Elbert County Sheriff has any unwritten custom, practice or policy with respect to the use of force."  (Mot. at 4.)

20

under § 1983 where its policies are "the moving force behind the constitutional violation," *Monell*, 436 U.S. at 694, the failure to train is actionable under § 1983 only where it can be thought of as a policy or custom, *Harris*, 489 U.S. at 388-89.  The question is not whether a training program is adequate; rather it is whether "an inadequate training program can justifiably be said to represent city policy." *Harris*, 489 U.S. at 390.

The Tenth Circuit has summarized Plaintiff's cause of action:

> In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements:
> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (citations and quotations omitted).

In his Amended Complaint, Plaintiff alleges that Defendant Frangis and Elbert County failed to train Defendants Peterson and Moore.  (Am. Compl. ¶¶ 23-26.)  He references the "intentional and malicious behavior of Deputies Peterson and Moore" and suggests that this behavior indicates a failure to properly train and supervise the deputies and that "such behavior is an accepted and common practice within the department." (*Id.* at ¶¶ 16, 17.)  Both of these statements are conclusory and therefore non-evidentiary.  Defendants argue that Plaintiff cannot and has not presented any evidence to establish either deliberate indifference on the part of

Sheriff Frangis or Elbert County, or any causal link between the alleged excessive force and the alleged inadequate training.  The court agrees.

First, Plaintiff has not shown that the training of Defendants Peterson and Moore with respect to use of force was, in fact, inadequate.  In his response brief, Plaintiff characterizes Defendant Moore's deposition testimony as follows:

> Q:     Are you, as a police officer, instructed or trained on when the use of force is necessary?
>
> A:     No.  I believe that for each person their level of force varies.

(Resp. at 9.)  Plaintiff proffers this as a statement by Defendant Moore that "he was not trained in the use of excessive force."  (*Id.*)  However, the statement is taken out of context.  The excerpt of Moore's deposition provided by Plaintiff indicates that prior to this Defendant Moore testified:

> Q:     . . .[8] been instructed in any class on what excessive force is?
>
> A:     Yes.
>
> Q:     If yes, then can you please describe what you learned with excessive force?
>
> A:     That you use force that's reasonable and appropriate to gain control of the situation.   Excessive force would be anything beyond what's reasonable and appropriate.

---

[8] Plaintiff did not provide the previous page of the deposition.

(Resp. Ex. 15.)  Even if this incomplete deposition excerpt constitutes evidence that Defendant

Moore's training was inadequate, Plaintiff failed to allege, much less provide evidence, that the

inadequate training demonstrates deliberate indifference on the part of Defendant Frangis or

Elbert County toward people with whom the sheriff's deputies come into contact or that there is

a causal link between the alleged constitutional deprivation and the allegedly inadequate

training.  Accordingly, summary judgment is appropriate.

### 2.      Negligent Hiring

The Supreme Court has also addressed the issue of municipal liability for a single hiring

decision.  *See Brown*, 520 U.S. 397.  The Court noted that, unlike failure to train where "a

pattern of tortious conduct by inadequately trained employees" may establish the "deliberate

indifference necessary to trigger municipal liability," *Brown*, 520 U.S. at 407, it is particularly

difficult for a single hiring decision to give rise to the necessary fault and causation to impose §

1983 liability on a municipality, *id.* at 410-11.  "A finding of culpability simply cannot depend

on the mere probability that any officer inadequately screened will inflict any constitutional

injury.  Rather, it must depend on a finding that *this* officer was highly likely to inflict the

*particular* injury suffered by the plaintiff."  *Id.* at 412 (emphasis in original).

In his Amended Complaint Plaintiff claims that Defendant Frangis and Elbert County

"negligently hired . . . Defendants Moore and Peterson, and other Sheriff's Department Deputies,

and by doing so, fostered and maintained an apathetic atmosphere, the results of which led

Sheriff's Deputies to violate the constitutional and statutory rights of citizens under color of state

law."  (Am. Compl at ¶ 24.)  Again, this allegation is completely conclusory without any factual

basis.  Plaintiff also claims that "the use of excessive, unnecessary, unlawful and violent force in the arrest and seizure of [Plaintiff], as a result of Defendants Peterson and Moore's negligent hiring . . . , violated Plaintiff's civil and constitutional rights."  (*Id.* at ¶ 26.)  Not only does Plaintiff not allege deliberate indifference on the part of Defendant Frangis or Elbert County, he has not presented any evidence to suggest that Defendant Frangis or Elbert County were deliberately indifferent to Plaintiff's constitutional rights when Defendants Peterson and Moore were hired.

In his response Plaintiff complains that Defendant Peterson gave vague and evasive answers during his deposition, including in response to a question regarding Peterson's psychiatric record.  (Resp. at 10.)  Plaintiff states that he believes the answer to this question "may provide relevant information as to Defendant Peterson's mental condition and show that Defendant Frangis should not have hired him."  (*Id.*)

The court fails to see how information from Defendant Peterson regarding his psychological record might establish deliberate indifference on the part of Defendant Frangis or Elbert County.  While inadequate screening of an applicant's background may reflect "indifference" in layman's terms, "that is not the relevant 'indifference.'"  *Brown*, 520 U.S. at 411.  "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Id.*

Importantly, discovery closed on November 30, 2010.  (Doc. No. 78.)  Plaintiff has not filed a motion to compel with regard to this information and did not seek to reopen discovery

24

until he filed his response on December 29, 2010.[9]  While Fed. R. Civ. P. 56 contemplates

additional discovery in certain circumstances when facts are unavailable to the nonmoving party

to oppose a motion for summary judgment, Plaintiff has not followed the proper procedure.  He

must show "by affidavit or declaration that, for specified reasons, [he] cannot present facts

essential to justify [his] opposition."  Fed. R. Civ. P. 56(d).  Plaintiff has not provided such an

affidavit or declaration.  In the absence of any evidence regarding Defendant Frangis's or Elbert

County's deliberate indifference to the rights of people with whom Defendants Peterson and

Moore come into contact, summary judgment on Plaintiff's claim for negligent hiring is

appropriate.

   3.      **Failure to Supervise**

        Supervisory liability claims under § 1983 are more properly asserted against a defendant

in his individual capacity.  *See Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir.

2010).  Because Plaintiff has sued Defendant Frangis only in his official capacity, his claim for

failure to supervise must be analyzed under the requirements for municipal liability.

Accordingly, Plaintiff must show that the failure to supervise was pursuant to or constituted a

municipal policy or custom that was the moving force behind the alleged constitutional violation.

*Brown*, 520 U.S. at 404.  In his response, Plaintiff contends that Defendant Frangis has been

dishonest in his answers to interrogatories and deposition testimony which suggests an "issue

regarding his mental capacity to supervise and direct officers under his command."  (Resp. at 9-

---

[9] According to Local Rule, "[a] motion shall not be included in a response or reply to the original
motion.  A motion shall be made in a separate paper."  D.C.COLO.LCivR 7.1C.

10.)  Clearly, Plaintiff has not provided evidence that Defendant Frangis's allegedly inadequate supervision was pursuant to a municipal policy or custom or that such inadequate supervision was the moving force behind the alleged use of excessive force and summary judgment should be granted.

### 4.      Failure to Discipline

Finally, Plaintiff asserts a claim against Defendant Frangis and Elbert County for failure to discipline.  As Defendants note, it is unclear from Plaintiff's complaint whether he refers to a failure to discipline Defendants Peterson and Moore as a result of the events of April, 5, 2007 or for some prior incident.  (Mot. at 16.)   In his response Plaintiff asserts that Defendant Frangis did not investigate Plaintiff's claims and without an investigation Defendant Frangis could not impose discipline.  (Resp. at 9.)  Accordingly, the court construes Plaintiff's argument as a claim that Defendant Frangis failed to discipline Defendants Peterson and Moore for the events of April 5, 2007.  Because Plaintiff must show a "direct causal link between the custom or policy and the violation alleged," Defendant Frangis's alleged failure to discipline Defendants Peterson and Moore for the events in question cannot have *caused* the alleged violation.  *See Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009) (noting that, while a failure to investigate or reprimand might send a message that future violations are tolerated, there cannot be a causal connection due to basic principals of linear time).  Accordingly, summary judgment is appropriate.

**C.     Extreme and Outrageous Conduct**

Finally, Defendants argue that Plaintiff's claim for extreme and outrageous conduct is barred by the statute of limitations.

Under Colorado law, "all actions against sheriffs . . . police officers, . . . or any other law enforcement authority" "shall be commenced within one year after the cause of action accrues, and not thereafter." COLO. REV. STAT. § 13-80-103(1)©.  The term sheriffs "includes the whole class of officers performing the duties of the office of sheriff," including deputy sheriffs. *Bailey v. Clausen*, 557 P.2d 1207, 1211 (1976).

Plaintiff brings his claim for extreme and outrageous conduct against Defendants Peterson and Moore.  (Am. Compl. at ¶¶ 28-32.)  He claims that "Defendants Peterson and Moore engaged in extreme and outrageous conduct, i.e., they used unnecessary, excessive, unlawful and violent force against Plaintiff while affecting his arrest for a non-violent offense and while not offering physical resistance to his arrest." (*Id.* at ¶ 29.)  The alleged extreme and outrageous conduct is thus premised on the same interaction between Plaintiff and Defendants Peterson and Moore on April 5, 2007 as his excessive force claim.  Accordingly, the one-year statute of limitations ran almost a year before Plaintiff filed his suit on March 24, 2009.  (*See* Doc. No. 1.)

Plaintiff's arguments in response are to no avail.  He claims that COLO. REV. STAT. § 13-80-103 does not apply because his Amended Complaint clearly states that "his action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution." (Resp. at 10.)  However, there is no

claim under 42 U.S.C. § 1983 or the United States Constitution for "extreme and outrageous conduct."  Moreover, his Amended Complaint also cites the court's "supplemental jurisdiction under . . . the Colorado Statutes Annotated."  For this claim to exist, it must be a state law tort claim.  However, because it is barred by the applicable statute of limitations, summary judgment must be granted.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion for Summary Judgment" (Doc. No. 83) be GRANTED IN PART and DENIED IN PART.  The court recommends that it be DENIED with respect to Plaintiff's First Claim for Relief for excessive force against Defendants Peterson and Moore and GRANTED in all other respects and as to all other claims and defenses, and that Defendants Frangis and Elbert County be dismissed.  Further, this court

RECOMMENDS that the caption of this case be amended to delete Defendant Elbert County Sheriff's Department because no surviving claims exist.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of April, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge